UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | :  10 Cr. 709 (GBD) |
| JAIME CASSUTO,<br>   a/k/a "Jay Cassuto,"<br>DAVID CASSUTO, and<br>ISAAK KHAFIZOV, | :<br><br>:<br><br>: |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTION *IN LIMINE*

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nicole Friedlander
Niketh V. Velamoor
Assistant United States Attorneys
    -Of Counsel-

The Government respectfully submits this motion *in limine* to request a ruling that the Government may offer certain evidence at trial, and to notify the Court that the Government will seek to preclude certain evidence if the defendants seek to introduce it.

First, the Government seeks to admit evidence that defendants Jaime and David Cassuto engaged in prior mortgage fraud with a witness in this case who is expected to testify, among other things, that David Cassuto invited him to join the charged conspiracy. The evidence is admissible on several different grounds, including (1) as direct evidence of the charges in the Indictment, because it is necessary to explain the background and relationship of trust between the witness and the Cassutos, and to complete the story of the crimes charged; (2) in the alternative, pursuant to Federal Rule of Evidence 404(b); and (3) as part of the *Giglio* disclosure for the Government's witness.

Second, the Government seeks to admit, pursuant to Rule 404(b), evidence that defendants Jaime and David Cassuto engaged in prior mortgage fraud with respect to a particular residential property in Long Island. The evidence is necessary to demonstrate the defendants' intent, knowledge, opportunity, and absence of mistake or accident – all of which are expected to be in dispute at trial – with respect to the "mortgage modification" fraud charged in the Indictment.[1]

Finally, the Government has learned that the defendants may call as witnesses

---

[1] The Government also has information suggesting that the defendants failed to report on their business and/or individual tax returns the hundreds of thousands of thousands of dollars in fraudulent proceeds that they collectively received during the conspiracy. The Government obtained an order authorizing the release of tax returns on December 23, 2011 and is awaiting the responsive documents. If that information is confirmed by the relevant tax returns, the Government intends to offer this evidence at trial as direct evidence of the defendants' fraudulent intent and consciousness of guilt.

certain (as yet unidentified) of their former employees at American Home Recovery a/k/a Benjamin Modification Agency ("AHR"), the company through which the Government alleges the scheme operated, who are expected to offer "good acts" testimony regarding non-fraudulent work they allegedly performed at AHR.  The Government will move to preclude any such testimony under clear Second Circuit law that evidence that the defendants or others under their supervision have engaged in non-fraudulent conduct is irrelevant to the question of whether the defendants engaged and/or had knowledge of fraudulent conduct charged by the Government.

**I.     Background**

   **A.     The Charges**

The defendants are charged in a four-count indictment with conspiracy to commit mail and wire fraud (Count One), wire fraud (Count Two), and mail fraud (Counts Three and Four).  Count One charges the defendants based on their execution of a "mortgage modification" fraud scheme, described below, through AHR and its employees.  Count Two charges that the defendants used numerous wires, and Counts Three and Four charge that the defendants used the mails, in the course of their scheme.

   **B.     The Scheme to Defraud**

The Government expects the evidence at trial to show that the defendants created AHR in or about mid-2008 with the purported goal of helping financially struggling homeowners to obtain "modifications" to their respective mortgages, including, for example, lower interest rates and/or principal amounts.  In reality, the defendants' only goal was to obtain as much money as possible from clients, as quickly and for as long as possible, and they obtained that money through fraud.

The Government expects the evidence to show that the defendants recruited

victims in many ways, including by causing false and misleading solicitation letters to be mailed to homeowners that deceptively suggested that the homeowners "may be eligible for special modification program guidelines created in conjunction with the 'Governmental Economic Stimulus Act of 2008.'"  The solicitation letters also deceptively suggested that AHR's loan modification services were part of the "Stimulus Act of 2008," and encouraged homeowners to call AHR "to confirm eligibility."  In reality, AHR's services were not a part of any federal stimulus program, and homeowners did not need the services of an entity such as AHR to apply for any available program, a fact the defendants well knew.  Indeed, as victims are expected to testify, AHR representatives, particularly Khafizov, repeatedly instructed victims to stop speaking with their mortgage lenders, to ignore communications from their lenders including foreclosure notices, and to disbelieve any statements by the lenders that AHR had never contacted them on the customer's behalf and/or that AHR could be a fraud.

>The Government expects the evidence to show that the defendants further lured victims by hiring dozens of salespeople to make false promises and countless misrepresentations to potential customers about AHR's "expert" services.  As witnesses are expected to testify, salespeople were instructed to promise, among other things, that potential customers were guaranteed to receive mortgage modifications with AHR's assistance, that they would receive those modifications quickly (typically within 30-90 days), and that notwithstanding the guarantee of success, victims' up-front payments were refundable.  In reality, the process of obtaining a mortgage modification was, at best, a lengthy and uncertain process, and AHR, which had hired only one person to attempt to obtain such modifications from the lenders, met with little success.  The Government expects the evidence to show that the defendants never intended to, and did not in fact, refund their victims' money, and that in an effort to appease complaining customers,

AHR engaged in additional fraud by creating fake leases and other false documents, and by encouraging those customers to submit false income statements to their mortgage lenders, in an effort to trick the lenders into agreeing to the mortgage modifications.

The Government expects the evidence to show that in the spring of 2009, without informing their customers, the defendants closed AHR's offices, and dumped their customers' files with another individual in the mortgage modification business to whom the Cassutos were indebted, suggesting that he attempt to obtain additional up-front money from the victims by offering them help obtaining the mortgage modifications that AHR had promised, but failed, to deliver.

The Government also expects the evidence to show that the defendants' fraud was lucrative, and that they each earned, at a minimum, tens of thousands of dollars in fraudulent proceeds from the scheme. Victims generally lost all the money they paid to the company, and many had their homes fall into foreclosure as they followed AHR's "expert" advice to stop paying their mortgages.

I. **Evidence that the Cassutos Engaged in Mortgage Fraud with a Testifying Witness Is Admissible as Direct Evidence of the Crimes Charged**

    A. **Proffered Evidence**

The Government intends to offer evidence that Jaime and David Cassuto engaged in mortgage fraud with a witness (the "Witness") in or about 2005 while they were collectively employed at Top Dot Mortgage, a/k/a BLS Premium Funding, a Long Island-based mortgage broker. The Witness is expected to testify that the Cassutos taught him how to commit such fraud, including by creating fake leases and other false documents in support of fraudulent mortgage applications. The Witness is further expected to testify that a few years later, David

Cassuto attempted to recruit the Witness to join AHR, explaining that the Cassutos were creating the company to offer mortgage modifications to customers, that they would review potential customers' bank statements in an effort to take the largest possible up-front fees from those customers, that they would not provide customers with refunds, and that they would only even consider providing a refund if a customer became particularly aggressive about obtaining one.

### B. Applicable Law

The Second Circuit has long held that "[e]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir.1997)) (internal quotation marks omitted); see United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007), cert. denied, 129 S. Ct. 252 (2008) (same); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ('evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"). In addition, it is well-settled that such evidence is also admissible to explain the development of an illegal relationship between co-conspirators, and to explain the mutual trust that existed between them. See, e.g, United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) (noting that "legitimate purpose[s] for presenting evidence of extrinsic acts" include "explain[ing] how a criminal relationship developed," and "help[ing] the jury understand the basis for the co-conspirators' relationship of

6

mutual trust," and concluding that "evidence of prior illicit activities involving [defendant] and his co-conspirators" was properly admissible to "explain[] to the jury how the relationship between [defendant] and his underlings evolved").

### C.  Discussion

Testimony that the Cassutos engaged in prior fraud with the Witness is directly admissible and necessary to explain the background and relationship of trust that existed between the Cassutos and the Witness, and to complete the story of the charged crimes.

First, evidence of the prior fraud scheme explains the basis on which David Cassuto trusted the Witness, admitting to him that AHR would essentially squeeze as much money as possible from struggling homeowners, and that it had no intention of enabling them to obtain refunds (a fact which directly contradicts a key promise that AHR typically made to its customers).  The fact that the Cassutos and the Witness had worked together in a mortgage fraud scheme in the past makes it understandable that David Cassuto would readily admit to such unscrupulous and potentially incriminating behavior, and that he would invite the Witness to engage in the same behavior.  Without evidence that the Witness previously engaged in a fraud scheme with the Cassutos, the jury will not be in a position to understand why David Cassuto would be in a position to trust the Witness at all.  That is, without the evidence, the Witness would appear simply appear to be an innocuous former colleague, and the jury may be misled into thinking it is incredible that David Cassuto would make such serious admissions to him, particularly given that David Cassuto is not alleged to have made such admissions to the employees of AHR.

Separately, the existence of the previous conspiracy helps explain how the fraud charged in this case came into existence so quickly and proceeded so smoothly.  The Cassutos

did not invent the "mortgage modification" scheme charged in the Indictment out of thin air. Rather, the Cassutos (who are brothers) developed a criminal relationship well before founding AHR, and they used some of the same significant elements of their prior scheme – including creating phony leases and false income statements, and convincing otherwise innocent people to sign and submit false documents to banks – in the charged scheme.  Thus, when the opportunity arose to perpetuate the charged scheme, the Cassutos had the experience and relationship of co-conspirator trust to perpetuate the vicious fraud that this scheme represents.

## II. Evidence of the Prior Conspiracy Between the Cassutos and the Witness Is Admissible Under Rule 404(b)

In the alternative, the evidence set forth above is admissible pursuant to Federal Rule of Evidence 404(b) to demonstrate the Cassutos' intent, knowledge, plan, absence of mistake or accident, and/or motive to commit the crimes charged.

### A. Applicable Law

Rule 404(b) provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

Fed. R. Evid. 404(b).  It is well-settled that "other acts" evidence is admissible under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  See, e.g., United States v. Guang, 511 F.3d 110, 121 (2d. Cir. 2007) (citations omitted).

The Second Circuit takes an "'inclusionary' approach to the admission of prior act evidence, under which "evidence of prior crimes, wrongs, or acts 'is admissible for any

purpose other than to show a defendant's criminal propensity'" so long as it is not substantially outweighed by the danger of unfair prejudice.  United States v. Paulino, 445 F.3d 211, 221 (quoting United States v. Pitre, 960 F.2d 1112, 1118-19 (2d Cir. 1992)); see also United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996) (providing that proof of state of mind, such as intent, is a "proper purpose" for admission of other crimes evidence under Rule 404(b) (quoting Huddleston v. United States, 485 U.S. at 691)); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity").

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion.  See United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003).   If requested, such evidence must be admitted with limiting instructions to the jury.  See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

**B.   Discussion**

In addition to serving as direct evidence of the charged scheme, evidence of the Cassutos' prior fraud scheme with the Witness demonstrates the Cassutos' knowledge, intent, opportunity, and lack of mistake or accident in committing the crimes charged.   The Second Circuit has repeatedly upheld the admission of evidence concerning a defendant's other conduct under Rule 404(b) where the defendant's state of mind is at issue, as the Government anticipates will be the case here.  See, e.g., United States v. Mills, 895 F.2d 897, 907 (2d Cir.1990) ("Under Rule 404(b), relevant evidence of other crimes, wrongs, or acts may be admitted at trial to show that a defendant who claims that his conduct had an innocent explanation had the intent to

9

commit the offense.") (internal quotation marks omitted); Zackson, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged"); United States v. Birrell, 447 F.2d 1168, 1172 (2d Cir. 1971) (noting that "evidence of similar acts in fraud cases may be introduced where knowledge or intent is at issue, to give rise to an inference of knowledge or intent").[2]

### III. Evidence of the Prior Conspiracy Between the Cassutos and the Witness Is Admissible As Part Of The Government's Giglio Disclosures Relating To The Witness

Another basis for admission of the proffered evidence is that, because the Witness participated in the prior mortgage fraud scheme, it is incumbent upon the Government pursuant

---

[2]  With respect to the timing of the Government's introduction of intent or knowledge evidence under Rule 404(b), the Second Circuit has held that "as a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case.  However, where, as here, it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Pitre, 960 F.2d at 1120.  Thus, in order to forestall the admission of his prior crimes in the Government's case-in-chief, the defendant must clearly and unequivocally remove knowledge and intent from the case:

> When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

United States v. Nachamie, 101 F. Supp. 2d 134, 138-39 (S.D.N.Y. 2000) (quoting United States v. Figueroa, 618 F.2d 934, 942 (2d Cir. 1980)).  Here, given the evidence, there is no other plausible defense that the Cassutos could assert other than a lack of knowledge or intent. Therefore, because of the significance of the 404(b) evidence in allowing the Government to prove an essential element of the crime charged, the Government respectfully requests that the Court render a decision as to its admissibility prior to the beginning of trial, so that the Government may refer to the evidence in its opening statement to the jury.

to United States v. Bagley, 473 U.S. 667 (1985), and Giglio v. United States, 405 U.S. 150 (1972), to apprize the jury of these acts, and in the course of doing so, the Government is permitted to elicit the witness's testimony about the acts "to avoid the appearance that it [is] concealing impeachment evidence from the jury." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991); United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987).  Any attempt to "sanitize" the Giglio material of references to the Cassutos would be unfairly prejudicial to the Government.  That is, the Witness's testimony will include a description of his involvement in the prior mortgage fraud scheme as part of the Government's Giglio disclosure on direct examination, but without reference to the Cassutos' role, the defendants would be able to attack the Witness on cross examination and in jury addresses as a criminal who engaged in mortgage fraud, and the jury would not know that the Cassutos themselves were partners in those schemes.

## IV.　Evidence of the Cassutos' Prior Mortgage Fraud Involving a Property on Long Island Is Admissible Under Rule 404(b)

### A.　Proffered Evidence

The Government intends to offer evidence that Jaime and David Cassuto engaged in mortgage fraud with respect to the purchase of a particular residential property in Long Island in or about 2007.  In particular, through the brief testimony of one witness, the Government will offer evidence that the Cassutos together tricked the sellers of the property into thinking that one of them intended to purchase and reside in the home, while at the same time, they obtained a mortgage on the property by submitting documents to the mortgage lender that were filled with lies about Jaime Cassuto's income, employment, and intent to reside there.  Further, the Government has information suggesting that the Cassutos obtained a mortgage far in excess of the property's true purchase price, and split the excess proceeds among themselves and their co-

11

conspirators; if bank records (which the Government expects shortly to receive) confirm this information, the Government will offer this piece of evidence as well.

    **B.**    **Discussion**

Evidence of the Cassutos' fraudulent property purchase demonstrates their knowledge, intent, opportunity, and lack of mistake or accident in committing the crimes charged. Such evidence is extremely important to disprove the Cassutos' expected defense that they had no intention of committing any fraud through AHR, and that if any fraud occurred, it was without their contemporaneous knowledge and the result of bad acts by one or more "rogue" employees. In the prior fraud, the Cassutos engaged in concerted action to trick otherwise innocent people, and to prepare false and fraudulent documents in order to deceive lenders into giving the Cassutos what they wanted – that is, conduct very similar to their alleged conduct here with respect to certain of AHR's customers. See Mills, 895 F.2d 897, 907 (2d Cir.1990).

**V.**    **Rule 403 Does Not Bar The Admission Of The Other Acts Evidence**

Where evidence is offered for a proper purpose, including under Rule 404(b), the Court may only exclude the evidence if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. Zackson, 12 F.3d at 1182. Moreover, the Second Circuit has repeatedly held under Rule 403 that evidence admissible under Rule 404(b) is not unduly prejudicial to a defendant so long as the court gives a limiting instruction to the jury explaining the proper purpose for the other crimes evidence. See United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996); Rosa, 11 F.3d at 334.

There is no basis to exclude any of the proffered evidence under Federal Rule of Evidence 403. First, the proffered evidence is no more sensational (and is, indeed, far less sensational) than the direct evidence concerning the Cassutos' participation in the advance fee

12

scheme charged in the Indictment, which involves victimizing hundreds of innocent, financially struggling people (as opposed to the sophisticated financial institutions they previously defrauded).  See United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (quoting Roldan-Zapata, 916 F.2d at 804; United States v. Peters, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence).

    Furthermore, the proffered evidence will not significantly expand or increase the length of the trial. With respect to the Cassutos' fraudulent property purchase, the evidence will be offered through the short testimony of one witness, and a few business records.  And to the extent that the Court construes the portion of the Witness's testimony regarding mortgage fraud he engaged in with the Cassutos to be 404(b) evidence, that evidence will come through the testimony of an individual who the Government is already planning to call for direct evidence of the defendants' fraud at AHR, and who will explain his role in the prior mortgage fraud as part of his Giglio disclosure on direct examination.  It will take very little extra time for the Witness to disclose that the Cassutos were his partners in this fraud.

    In light of the significant non-propensity purposes for which the prior acts evidence is being offered, the non-sensational nature of the prior acts, and the Second Circuit's routine reliance, in the Rule 404(b) context, on limiting instructions to cure any possibility of unfair prejudice, there is no basis for contending that any "unfair prejudice" "substantially outweighs" the probative value of the proffered evidence.

**VI.     Defense Testimony Regarding Non-Fraudulent Conduct At AHR Should Be Precluded as Irrelevant**

Based on conversations with counsel for one of the defendants, the Government understands that one or more of the defendants may seek to call as witnesses certain former employees of AHR to testify about non-fraudulent work allegedly performed at AHR. Such testimony, if offered, would constitute impermissible "good acts" testimony. Courts, including the Second Circuit, have held that evidence that a defendant engaged in legal, honest conduct is simply irrelevant to whether the defendant engaged in, and/or had knowledge of, the fraudulent conduct charged by the Government. See United States v. Boykoff, 67 Fed. Appx. 15, 20-21 (2d Cir. May 21, 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (quoting United States v. Grimm, 568 F.2d 1136, 1138 (5th Cir. 1978)). See also United States v. Scarpa, 897 F.2d 63 (2d Cir. 1990) (surveillance tapes in which no incriminating statements were made are not discoverable because "[a] defendant may not seek to establish his innocence… through proof of the absence of criminal acts on specific occasions").

To date, the Government has not been informed of the identities of any of these potential witnesses or any specifics of their expected testimony. However, to the extent a defendant seeks to offer such "good acts" testimony to rebut evidence of fraud, the Government will move to preclude such testimony under the clear Second Circuit law that evidence that the defendants or others under their supervision have engaged in non-fraudulent conduct is irrelevant to the question of whether the defendants engaged and/or had knowledge of the fraudulent conduct charged by the Government.

* * *

For all these reasons, the Government respectfully submits that the proffered evidence should be admitted.

Dated:     New York, New York
           January 6, 2012

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney
                                            Southern District of New York

                              By:     s/Nicole Friedlander
                                            Nicole Friedlander/Niketh Velamoor
                                            Assistant United States Attorneys
                                            (212) 637-2211/1076

**Affirmation of Service**

NICOLE FRIEDLANDER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. On January 6, 2012, I caused a copy of the Government's Motion *In Limine* to be delivered by ECF to Anthony Collelouri, Esq., Richard Rehbock, Esq., and James Kousouros, Esq., counsel for defendants Jaime Cassuto, David Cassuto, and Isaak Khafizov, respectively.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:      New York, New York
            January 6, 2012


                                            _____/s/_____
                                            Nicole Friedlander
                                            Assistant United States Attorney

.