UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

    -v.-                                          :        S1 10 Cr. 709 (GBD)

ISAAK KHAFIZOV,                               :

                                 :

                Defendant.

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S SECOND MOTION *IN LIMINE*


PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nicole Friedlander
Niketh V. Velamoor
Assistant United States Attorneys
    -Of Counsel-

The Government respectfully submits this second motion *in limine* to request a ruling permitting the Government to offer, at trial, very limited evidence that the defendant, Isaak Khafizov ("Khafizov"), engaged in prior mortgage fraud with Jaime and David Cassuto, his partners in the charged "mortgage modification" fraud scheme run through their company, American Home Recovery, f/k/a Benjamin Modification Agency ("AHR").  The evidence, which will come in during the testimony of Jaime or David Cassuto, will consist of brief testimony about the prior mortgage fraud conspiracy between Khafizov and the Cassutos.  This evidence is admissible on several different grounds, including (1) as direct evidence of the charges in the Superseding Indictment, because it is necessary to explain the background and relationship of trust between the co-conspirators, and to complete the story of the crimes charged; (2) in the alternative, pursuant to Federal Rule of Evidence 404(b); and (3) as part of the *Giglio* disclosure for the Government's witness.

The Government also seeks to preclude testimony by defense witnesses about alleged non-fraudulent conduct of Khafizov or others at AHR, which is not relevant to rebut evidence of Khafizov's fraudulent scheme.

## I.    Background

### A.    The Charges

Khafizov is charged in a four-count indictment with conspiracy to commit mail and wire fraud (Count One), wire fraud (Counts Two and Four), and mail fraud (Count Three). Count One charges Khafizov based on his execution of a "mortgage modification" scheme to defraud financially struggling homeowners, as described below.  Count Two charges that Khafizov used numerous wires, and Counts Three charges that Khafizov used the mails, in the course of the scheme.  Count Four charges Khafizov with wire fraud based on his submission of

false documents to mortgage servicers in the course of the "mortgage modification" scheme charged in Count One.

**B.      The Scheme to Defraud**

The Government expects the evidence at trial to show that Khafizov and the Cassutos created AHR in or about April 2008 with the purported goal of helping financially struggling homeowners to obtain "modifications" to their respective mortgages, including, for example, lower interest rates and/or principal amounts.  In reality, their primary goal was to obtain as much money as possible from clients, as quickly and for as long as possible, based on misrepresentations and fraud.  The Government further expects the evidence to show that Khafizov ran the day-to-day operations of AHR, and personally solicited clients for the company.

The Government expects the evidence to show that Khafizov, through AHR, recruited victims in many ways, including by falsely representing that modifications were available through certain Government programs, and by causing false and misleading solicitation letters to be mailed to homeowners that deceptively suggested that the homeowners "may be eligible for special modification program guidelines created in conjunction with the 'Governmental Economic Stimulus Act of 2008.'"   The solicitation letters also deceptively suggested that AHR's loan modification services were part of the "Stimulus Act of 2008," and encouraged homeowners to call AHR "to confirm eligibility."  In reality, AHR's services were not a part of any federal stimulus program, and homeowners did not need the services of an entity such as AHR to apply for any available program, a fact Khafizov well knew.  Indeed, as victims are expected to testify, Khafizov repeatedly instructed victims to stop speaking with their mortgage lenders, to ignore communications from their lenders including foreclosure notices, and to disbelieve any statements by the lenders that AHR had never contacted them on the customer's

3

behalf and/or that AHR could be a fraud.

The Government expects the evidence to show that Khafizov further lured victims by making false promises and countless misrepresentations (and by directing AHR's sales people to make the same such false promises and misrepresentations) to potential customers about AHR's services.   As witnesses are expected to testify, Khafizov and other sales people promised, among other things, that potential customers were guaranteed to receive mortgage modifications with AHR's assistance, that they would receive those modifications quickly (typically within 30-90 days), and that notwithstanding the guarantee of success, victims' up-front payments were fully refundable.  In reality, the process of obtaining a mortgage modification was, at best, a lengthy and uncertain process, and AHR, which had (at its height) hired just two people to attempt to obtain such modifications from the lenders, met with little success.  The Government expects the evidence to show that Khafizov never intended to, and generally did not in fact, refund victims' money.   Further, in an effort to silence complaining customers, including those demanding refunds, Khafizov engaged in additional fraud by creating fake leases and other false documents, and by encouraging his customers to submit false statements to their mortgage lenders, in an effort to trick the lenders into agreeing to the mortgage modifications.  He did so in order to appease customers, and prevent them from exposing the fraud.

The Government expects the evidence to show that AHR quickly became inundated with customer complaints, and that Khafizov, and others at his direction, lied repeatedly to customers in an effort to hide the company's failure and his unwillingness to return customers' money.   The Government further expects the evidence to show that in late February 2009, amidst a tide of customer complaints, AHR received a subpoena regarding its practices

from the New York Attorney General's office which caused the company's employees to quit and the company to collapse.  Thereafter, without informing their customers, Khafizov and the Cassutos closed AHR's offices, and dumped their customers' files with another individual in the mortgage modification business, suggesting that he attempt to obtain additional up-front money from the victims by offering them help obtaining the mortgage modifications that AHR had promised, but failed, to deliver.  The Government expects the evidence to show that even after the collapse of his company, Khafizov continued to take money from victims and to recruit new victims based on the same false promises he had made from the outset of the scheme.

Finally, the Government also expects the evidence to show that Khafizov's fraud was lucrative, and that he earned, at a minimum, tens of thousands of dollars in fraudulent proceeds from the scheme.  Victims generally lost all the money they paid to the company, and many had their homes fall into foreclosure – including one victim who lost her home to foreclosure – after following Khafizov's instructions to stop making mortgage payments on their homes.

I.   **Evidence that Khafizov Engaged in Mortgage Fraud with the Cassutos Is Admissible as Direct Evidence of the Crimes Charged**

A.   **Proffered Evidence**

The Government intends to offer evidence that immediately prior to engaging in their charged "mortgage modification" fraud scheme, Khafizov and the Cassutos engaged in mortgage fraud together.  In particular, from about 2005 to 2006, Khafizov and the Cassutos worked together at Premium Capital Funding ("Premium"), a Long Island mortgage broker and lender, and from about 2006 to 2008, Khafizov and the Cassutos worked together at Franklin First Financial ("Franklin First"), another Long Island-based mortgage broker and lender.   At

both companies, Khafizov and the Cassutos worked closely together to engage in mortgage fraud. In particular, in order to earn commissions, the Cassutos and Khafizov regularly falsified borrowers' income and assets, created and submitted false supporting documents, including fake leases, in support of fraudulent loan applications, and lied to clients about the true costs of obtaining mortgage loans in order to induce the clients to take out the loans. With the collapse of the mortgage market, in 2008, while working at Franklin First, the Khafizov and the Cassutos began the AHR scheme, ultimately leaving Franklin First to run AHR at offices in Manhattan.

The Government intends to offer this limited evidence through very brief testimony of either Jaime or David Cassuto, who will be called as a witness primarily to provide testimony about the charged fraud.

### B.  Applicable Law

The Second Circuit has long held that "[e]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir.1997)) (internal quotation marks omitted)); see United States v. Rigas, 490 F.3d 208, 238-39 (2d Cir. 2007) (affirming admission of uncharged acts, such as false invoice submission, on same grounds); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense");  United States v. Ihab Tartir, 347 Fed. Appx. 655 (2d Cir. September 30, 2009) (affirming Judge Lynch's decision to allow a cooperating witness, who testified about the

6

charged immigration fraud, to testify generally about a prior immigration fraud conspiracy between him and the defendant, and finding that such testimony "provided background related to [the cooperating witness's] relationship with [the defendant] and was some evidence that a conspiracy existed" ); see also United States v. Derosena, 186 Fed. Appx. 27 (2d Cir. May 23, 2006) (evidence of prior fraud properly introduced through cooperating witness to show "knowledge and intent and for the purpose of showing a prior course of dealings between the conspirators").

In addition, it is well-settled that such evidence is also admissible to explain the development of an illegal relationship between co-conspirators, and to explain the mutual trust that existed between them. See, e.g, United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) (noting that "legitimate purpose[s] for presenting evidence of extrinsic acts" include "explain[ing] how a criminal relationship developed," and "help[ing] the jury understand the basis for the co-conspirators' relationship of mutual trust," and concluding that "evidence of prior illicit activities involving [defendant] and his co-conspirators" was properly admissible to "explain[] to the jury how the relationship between [defendant] and his underlings evolved"). Indeed, Courts in this District routinely admit such evidence for these purposes.  See, e.g., United States v. Raul Santana, 10 Cr. 684 (Stein, J.) (allowing cooperating witness to testify about prior drug dealing with the defendant in order to show the genesis of their criminal relationship, and the basis of the trust and confidence that led them to commit subsequent robberies together); United States v. Albert Atkins, 10 Cr. 391 (McMahon, J.) (multiple cooperating witnesses testified generally about prior drug dealing with defendant); United States v. Jose Robles, 08 Cr. 1114 (Sweet, J.) (cooperating witness testified about prior robbery involving defendant); United States v. Lillian Hernandez-Rosado, 10 Cr. 1285 (Kaplan, J.) (allowing testimony about

7

defendant's prior uncharged criminal activity); United States v. Ihab Tartir, 07 Cr. 1065 (Lynch, J.) (allowing cooperating witness to testify generally about prior fraud committed with defendant); Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged").

## C.    Discussion

Limited testimony that Khafizov engaged in prior fraud with the Cassutos is directly admissible and necessary to explain the background and relationship of trust that existed between  the co-conspirators, and to complete the story of the charged crimes.

First, evidence of their prior mortgage fraud explains the basis on which the Cassutos and Khafizov trusted each other, forming AHR with the understanding and belief that they would take any necessary steps - including by committing fraud - to obtain up-front fees from homeowners, and to avoid refunding those fees under any circumstances, even where they had promised to provide them.  The fact that Khafizov and the Cassutos had worked together in a mortgage fraud scheme in the past makes it understandable that the Cassutos and Khafizov would trust each other to engage in such unscrupulous behavior.  Without evidence that Khafizov previously engaged in fraud with the Cassutos, the jury will not be in a position to understand why the Cassutos would trust Khafizov at all.  That is, without the evidence, Khafizov would appear simply appear to be an innocuous former colleague, and the jury may be misled into thinking it is incredible that the Cassutos would leave the day-to-day operations of a ongoing fraud scheme in his hands.

Separately, the existence of the previous conspiracy helps explain how the fraud charged in this case came into existence so quickly and proceeded so smoothly.  Khafizov and

the Cassutos did not invent the "mortgage modification" scheme charged in the Superseding

Indictment out of thin air.  Rather, they developed a criminal relationship well before founding

AHR, and they used some of the same elements of their prior scheme – including creating phony

leases and false income statements, and convincing otherwise innocent people to sign and submit

false documents to banks – in the charged scheme.   Thus, when the mortgage market collapsed,

preventing them from engaging in further mortgage fraud, Khafizov and the Cassutos had the

joint criminal experience and relationship of co-conspirator trust quickly to seize on the

opportunity to perpetuate the vicious fraud that this scheme represents.

**II.     Evidence of the Prior Conspiracy Between Khafizov and the Cassutos Is Admissible
          Under Rule 404(b)**

In the alternative, the evidence set forth above is admissible pursuant to Federal

Rule of Evidence 404(b) to demonstrate the Cassutos' intent, knowledge, plan, absence of

mistake or accident, and/or motive to commit the crimes charged.

**A.     Applicable Law**

Rule 404(b) provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character
> of a person in order to show action in conformity therewith.

Fed. R. Evid. 404(b).  It is well-settled that "other acts" evidence is admissible under Rule 404(b)

so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for

which the defendant is on trial; and (3) has probative value that is not substantially outweighed

by any unfair prejudicial effect.  See, e.g., United States v. Guang, 511 F.3d 110, 121 (2d. Cir.

2007) (citations omitted).

The Second Circuit takes an "'inclusionary" approach to the admission of prior

act evidence, under which "evidence of prior crimes, wrongs, or acts 'is admissible for any

purpose other than to show a defendant's criminal propensity'" so long as it is not substantially outweighed by the danger of unfair prejudice.  United States v. Paulino, 445 F.3d 211, 221 (quoting United States v. Pitre, 960 F.2d 1112, 1118-19 (2d Cir. 1992)); see also United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996) (providing that proof of state of mind, such as intent, is a "proper purpose" for admission of other crimes evidence under Rule 404(b) (quoting Huddleston v. United States, 485 U.S. at 691)); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity").

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion.  See United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003).   If requested, such evidence must be admitted with limiting instructions to the jury.  See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

**B.     Discussion**

In addition to serving as direct evidence of the charged scheme, evidence of the Khafizov's prior fraud scheme with the Cassutos' demonstrates Khafizov's knowledge, intent, opportunity, and lack of mistake or accident in committing the charged crimes, all of which are expected to be at issue in this case.   The Second Circuit has repeatedly upheld the admission of evidence concerning a defendant's other conduct under Rule 404(b) where, as here, the defendant's state of mind is at issue.  See, e.g., United States v. Mills, 895 F.2d 897, 907 (2d Cir.1990) ("Under Rule 404(b), relevant evidence of other crimes, wrongs, or acts may be admitted at trial to show that a defendant who claims that his conduct had an innocent

explanation had the intent to commit the offense.") (internal quotation marks omitted); Zackson, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged"); United States v. Birrell, 447 F.2d 1168, 1172 (2d Cir. 1971) (noting that "evidence of similar acts in fraud cases may be introduced where knowledge or intent is at issue, to give rise to an inference of knowledge or intent").[1]

Limited evidence of Khafizov's prior fraud scheme is exactly the type of evidence that is admissible under Rule 404(b). See, e.g., United States v. Brown, 393 Fed. Appx. 686, 2010 WL 3294179 (11th Cir. August 23, 2010) (upholding admission of evidence of prior mortgage fraud to show intent and knowledge in mail fraud prosecution, and finding that

---

[1]  With respect to the timing of the Government's introduction of intent or knowledge evidence under Rule 404(b), the Second Circuit has held that "as a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case. However, where, as here, it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Pitre, 960 F.2d at 1120. Thus, in order to forestall the admission of his prior crimes in the Government's case-in-chief, the defendant must clearly and unequivocally remove knowledge and intent from the case:

> When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

United States v. Nachamie, 101 F. Supp. 2d 134, 138-39 (S.D.N.Y. 2000) (quoting United States v. Figueroa, 618 F.2d 934, 942 (2d Cir. 1980)). Here, given the evidence, there is no other plausible defense that the Cassutos could assert other than a lack of knowledge or intent. Therefore, because of the significance of the 404(b) evidence in allowing the Government to prove an essential element of the crime charged, the Government respectfully requests that the Court render a decision as to its admissibility prior to the beginning of trial, so that the Government may refer to the evidence in its opening statement to the jury.

defendant's previous conduct in making false statements on mortgage applications was properly used to rebut his claim that his false income statements were accidental); United States v. Chukwuma, 2011 WL 6161009, at *2 (3d Cir. December 13, 2011) (finding that district court properly admitted defendant's false employment application, which stated that he had been laid off, when in fact, he was fired for creating fraudulently inflated invoices, where evidence was offered to show knowledge and absence of mistake to rebut defendant's claim that he did not know that inflated invoices were false). The evidence is particularly significant with respect to Count Four of the Superseding Indictment, which is based upon Khafizov's submission to mortgage lenders of fake lease agreements and false financial information regarding certain AHR clients in an effort to trick the lenders into agreeing to modifications for those clients. Without evidence of Khafizov's prior fraud, which involved submitting exactly the same false information, including false lease agreements, the jury could easily be misled into thinking that Khafizov submitted this false information at the behest of his clients, or otherwise by mistake or accident.

**III.   Evidence of the Prior Conspiracy Between Khafizov and the Cassutos Is Admissible As Part Of The Government's Giglio Disclosures Relating To The Witness**

Another basis for admission of the proffered evidence is that, because the Cassutos participated in the prior mortgage fraud scheme, it is incumbent upon the Government pursuant to United States v. Bagley, 473 U.S. 667 (1985), and Giglio v. United States, 405 U.S. 150 (1972), to apprize the jury of these acts, and in the course of doing so, the Government is permitted to elicit the witness's testimony about the acts "to avoid the appearance that it [is] concealing impeachment evidence from the jury." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991); United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987). Any attempt to

"sanitize" the Giglio material of references to Khafizov would be unfairly prejudicial to the
Government.  That is, the testimony of the witness (either Jaime or David Cassuto) will include a
description of his involvement in the prior mortgage fraud scheme as part of the Government's
Giglio disclosure on direct examination, but without reference to Khafizov's own role in that
scheme, Khafizov would be able to attack him on cross examination and in jury addresses as a
criminal who engaged in years of mortgage fraud, and the jury would not know that Khafizov
himself was his co-conspirator.

**IV.     Rule 403 Does Not Bar The Admission Of The Other Acts Evidence**

          Where evidence is offered for a proper purpose, including under Rule 404(b), the
Court may only exclude the evidence if the probative value of the evidence is "substantially
outweighed" by the danger of unfair prejudice.  Zackson, 12 F.3d at 1182.  Moreover, the Second
Circuit has repeatedly held under Rule 403 that evidence admissible under Rule 404(b) is not
unduly prejudicial to a defendant so long as the court gives a limiting instruction to the jury
explaining the proper purpose for the other crimes evidence.  See United States v. Pipola, 83 F.3d
556, 566 (2d Cir. 1996); Rosa, 11 F.3d at 334.

          There is no basis to exclude any of the proffered evidence under Federal Rule of
Evidence 403.  First, the proffered evidence is no more sensational – and is, indeed, far less
sensational – than the direct evidence concerning Khafizov's participation in the advance fee
scheme charged in the Superseding  Indictment, which involves victimizing hundreds of
innocent, financially struggling people (as opposed to the sophisticated financial institutions they
were primarily focused on defrauding in the past).  See Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992)
(in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence
"'did not involve conduct any more sensational or disturbing than the crimes with which [the

appellants were] charged'") (quoting <u>United States</u> v. <u>Roldan-Zapata</u>, 916 F.2d 795, 804 (2d Cir. 1990)); <u>United States</u> v. <u>Peters</u>, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence).

Furthermore, the proffered evidence will not significantly expand or increase the length of the trial.  Limited evidence of Khafizov's prior fraud will be offered through the short testimony of one witness.  And to the extent that the Court construes that testimony to be 404(b) evidence, the evidence will come through the testimony of Jaime or David Cassuto, whom the Government is already planning to call for direct evidence of Khafizov's fraud at AHR, and who will explain his role in the prior mortgage fraud as part of his <u>Giglio</u> disclosure on direct examination.  It will take very little extra time to disclose that Khafizov was a partner in this fraud.

In light of the significant non-propensity purposes for which the prior acts evidence is being offered, the non-sensational nature of the prior acts, and the Second Circuit's routine reliance, in the Rule 404(b) context, on limiting instructions to cure any possibility of unfair prejudice, there is no basis for contending that any "unfair prejudice" "substantially outweighs" the probative value of the proffered evidence.

## V.  Defense Testimony Regarding Non-Fraudulent Conduct at AHR Should Be Precluded as Irrelevant

As set forth more generally in the Government's first motion in limine, the Government understands that Khafizov seeks to call as witnesses certain former employees of AHR to testify about non-fraudulent work allegedly performed at AHR.  Such testimony, if offered, would constitute impermissible "good acts" testimony.  The Second Circuit has held that

evidence that a defendant engaged in legal, honest business conduct is simply irrelevant to whether the defendant engaged in, or had knowledge of, the fraudulent conduct charged by the Government.  See, e.g., United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999) (affirming the district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent");  United States v. Boykoff, 67 Fed. Appx. 15, 20-21 (2d Cir. May 21, 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (quoting United States v. Grimm, 568 F.2d 1136, 1138 (5th Cir. 1978)); see also United States v. Clover Perez, 2011 WL 1431985, at *1 (S.D.N.Y. April 12, 2011) (Aspen, J.) (refusing to allow defendant accused of preparing false immigration applications to introduce evidence that she had accurately advised certain clients about their eligibility for immigration benefits, or that she had prepared certain truthful and accurate applications, and citing Walker, 191 F.3d at 336); United States v. Scarpa, 897 F.2d 63 (2d Cir. 1990) (surveillance tapes in which no incriminating statements were made are not discoverable because "[a] defendant may not seek to establish his innocence… through proof of the absence of criminal acts on specific occasions").

To date, the Government has not been informed of the identities of any of these potential witnesses or any specifics of their expected testimony, but Khafizov has stated his intention to call such witnesses.   To the extent Khafizov seeks to offer such "good acts" testimony to rebut evidence of fraud, the Government moves to preclude the testimony under the well-settled  Second Circuit law holding that evidence that the defendant or others under his supervision have engaged in non-fraudulent conduct is irrelevant to the question of whether the

defendant engaged and/or had knowledge of the fraudulent conduct charged by the Government.

* * *

For all these reasons, the Government respectfully submits that the proffered evidence should be admitted, and that Khafizov should be precluded from offering "good acts" evidence.

Dated:      New York, New York
            April 9, 2012

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York

                         By:     s/Nicole Friedlander
                                    Nicole Friedlander/Niketh Velamoor
                                    Assistant United States Attorneys
                                    (212) 637-2211/1076

**<u>Affirmation of Service</u>**

NICOLE FRIEDLANDER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  On April 9, 2012, I caused a copy of the Government's Second Motion *In Limine* to be delivered by ECF to James Kousouros, Esq., counsel for defendant Isaak Khafizov.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:      New York, New York
            April 9, 2012


_____/s/_____
Nicole Friedlander
Assistant United States Attorney

.

17