UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

UNITED STATES OF AMERICA,

      -against-

                                                 Case No. 10-CR-709 (GBD)

ISAAK KHAFIZOV.

      Defendant.
_____x

## MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S IN LIMINE MOTION

                                                 James Kousouros
                                               260 Madison Avenue, 22nd Floor
                                               New York, New York 10016
                                               *Attorney for Isaak Khafizov*

# TABLE OF CONTENTS

The Government's 404(b) Proffer..................................................................................................1

F.R.E. 404(B)...................................................................................................................................1

    A. The issues cited by the Government are not sufficiently in dispute to justify admission of the proffered evidence................................................................................................3

    B. The conducted proffered by the government is not sufficiently similar to the charged conduct..........................................................................................................................6

    C. "Relationship of Trust"..........................................................................................................8

    D. Documentary disclosure by the Government in the event the proffered evidence is admitted........................................................................................................................9

The Government's Motion to Preclude............................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    - against -                                              10 Cr. 709 (GBD)

ISAAK KHAFIZOV,
                Defendant.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO GOVERNMENT'S IN LIMINE MOTION

The defendant, Isaak Khafizov, by and through his attorneys, James Kousouros and Allan Brenner, submit the following Memorandum of Law in opposition to the government's second motion *in limine*.

### *The Government's 404(b) Proffer*

The government seeks to offer evidence that "immediately prior to engaging in their charged "mortgage modification" fraud scheme, Khafizov and the Cassutos engaged in mortgage fraud together." According to the government "this limited evidence" will be presented "through very brief testimony of either Jaime or David Cassuto," two former co-defendants who have recently pleaded guilty and agreed to testify against Mr. Khafizov. We submit that this evidence should not be admitted pursuant to any of the justifications proffered by the government.

### *F.R.E. 404(b)*

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not

1

admissible to prove the character of a person in order to show action in conformity therewith." It may be admitted, however, for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . "

The standards in the Second Circuit for admission of other acts evidence under Rule 404(b) are well-established and exacting. The trial court must initially determine if the evidence is offered for one of the purposes allowed by Rule 404(b). If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case; and, if relevant, the court must then assess whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice from its admission. **United States v. Garcia**, 291 F.3d 1271 135 (2d Cir. 2002); **United States v. Pitre**, 960 F.2d 1112, 1119 (2d Cir. 1992). While the Second Circuit takes an "inclusionary" approach to admitting prior acts evidence, "[t]here is no presumption that such other-crimes evidence is relevant." **United States v. Manafzadeh**, 592 F.2d 81, 86 (2d Cir. 1979) (See also, **United States v. Halper**, 422 F.2d 432 (2d Cir. 1978) ["inclusionary view of the rule regarding other crimes and similar evidence... is by no means [a] view that such evidence is either presumed relevant or automatically admissible. Its relevance to an issue truly in dispute must be demonstrated."]. Finally, the Second Circuit has "emphasized that admission of such strongly prejudicial evidence should normally await the conclusion of the defendant's case, since the court will then be in the best position to balance the probative worth of, and the Government's need for, such testimony against the prejudice to the defendant" (**United States v. Benedetto**, 571

2

F.2d 1246 (2d Cir. 1978).

### A. *The issues cited by the government are not sufficiently in dispute to justify admission of the proffered evidence*

In the instant case, the government asserts that its evidence of Khafizov's prior fraud scheme with the Cassutos "demonstrates Khafizov's knowledge, intent, opportunity, and lack of mistake or accident in committing the charged crimes, all of which are expected to be at issue in this case." We submit that none of those elements are truly in issue here, since Mr. Khafizov denies any involvement in the charged criminal scheme to defraud. He *does not* aver that he participated unknowingly or accidentally, or unintentionally. Instead, he unequivocally posits that his conduct was non-criminal, and that he did not commit any of the acts charged in the indictment. As such, this evidence is of no probative value in this trial.

The Second Circuit has recognized repeatedly that simply because knowledge and intent are technically at issue as elements of a crime, Rule 404(b) evidence should not be admitted where the nature of the defense is such that they "are not really in dispute." **United States v. Colon**, 880 F.2d 650, 656 (2d Cir. 1989) (*quoting* **United States v. Benedetto**, 571 F.2d 1246, 1249 (2d Cir. 1978). Where, as here, the defense posits that the accused had not participated in a criminal scheme *at all*, the evidence has no cognizable value. **United States v. Manafzadeh**, *supra*, 592 F.2d 81; **United States v. Mohel**, 604 F.2d 748 (2d Cir. 1978).

The holding of **Benedetto** is particularly instructive. The defendant, a meat inspector for the Department of Agriculture, was accused of receiving certain monetary bribes in return for lax enforcement of various rules and regulations. The defendant

3

unequivocally denied having received such bribes. During trial, the government introduced evidence that the defendant had received similar types of payments from two persons not mentioned in the indictment, much like the evidence the government seeks to introduce through the testimony of Jaime and/or David Cassuto in this case. 571 F.2d at 1247-48. On appeal, the Second Circuit ruled that had the defendant confined his defense to the claim that he did not take the bribes alleged in the indictment, the district court's decision to allow the "other act" evidence may have been erroneous. As the Court explained, the defendant did not claim that he "took money from the four companies named in the indictment innocently or mistakenly." **Id.** at 1249. Rather, he simply claimed, as does Khafizov in the instant case, that he did not commit the crime at all and, therefore, "[k]nowledge and intent, while technically at issue, were not really in dispute." **Id.** [1]

The rationale of this evidentiary philosophy was cogently articulated by the Second Circuit in **United States v. Ortiz**, 857 F.2d 900 (2d Cir. 1988). In that case, the court explained that intent is not in issue when a defendant claims he did not commit the charged act at all, and that where the defendant relies on such a defense, "evidence of other acts is not admissible for the purpose of proving intent." 857 F.2d at 904. Thus, the court agreed with the lower court's decision to exclude the defendant's prior drug convictions in a case in which the defense at trial was that it was not the defendant, but

---

[1] The defendant, however, in **Benedetto**, testified that he had never taken bribes from anybody and it was this testimony that the Court ruled justified the admission of the evidence in issue. The Court stated that "[o]nce a witness (especially a defendant-witness) testifies as to a specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such a statement concerns a collateral matter in the case" (id. at 1248).

4

someone else, who sold drugs to an undercover officer.

In **United States v. Tarricone**, 996 F.2d 1414, 1421-22 (2d Cir. 1993), the court crystallized the **Benedetto-Ortiz** analysis, and re-emphasized its concern for prejudicial, superfluous evidence. In no uncertain terms, the court opined that "in some circumstances the very nature of a defense put forward by the defendant may itself remove an issue from a case." The need for any such prejudicial evidence is obviated, "[w]here a defendant claims that he did not commit the charged acts, as opposed to claiming that he acted innocently or mistakenly . . . " In such an instance, "[w]hen a defendant unequivocally relies on such a defense, evidence of other acts is not admissible for the purpose of proving intent." 996 F.2d at 1421-22. *See also* **United States v. Scott**, --- F.3d ----, 2012 WL 1143579 at *9.

This judicial concern for the receipt of gratuitously damaging evidence has resulted in a proscribed mechanism for trial courts to follow when an issue otherwise relevant is no longer so by virtue of the posited defense. The Second Circuit has explained that, if a defendant removes the element of intent or knowledge from a case, prior act evidence cannot be introduced for the purpose of establishing that element. **United States v. Colon**, 880 F.2d 650, 656-57 (2d Cir.1989); **United States v. Figueroa**, 618 F.2d 934, 941-42 (2d Cir.1980). In such circumstances, the defendant must then clearly and unequivocally remove the element from the case. **United States v. Figueroa**, 618 F.2d at 942.

In the case before this court, Khafizov is simply asserting that he was *never* a member of this conspiracy - not that his participation was innocent or unknowing, or that

5

he was duped - but that he did not commit the factual criminal acts charged. His posture in this regard is unequivocal and unchanging, and we will commit it to whatever form the court deems necessary.

We have repeatedly asserted that AHR was a legitimate, if poorly run mortgage modification business, and that the defendant's participation was lawful and free from fraudulent activity. In further support of this defense, we have opposed the government's efforts to limit the nature of the defense proof, to wit, that AHR engaged in legitimate and lawful efforts to obtain mortgage modifications for its clients and that the clients were fully apprized of the conditions and limits of their agreement with the company. See, discussion, *infra*. We likewise oppose the introduction of the proffered evidence to demonstrate facts which are not in issue by virtue of the defense posited.

Based upon the foregoing the government's application for the admission of this evidence for the purposes advanced should be rejected.

### B. *The conduct proffered by the government is not sufficiently similar to the charged conduct.*

Evidence of a prior act is not admissible to prove knowledge or intent unless that conduct is sufficiently similar to the charged conduct to permit a jury to reasonably draw the inference advocated by the proponent of the evidence. **United States v. Garcia**, 291 F.3d 127, 137 (2d Cir. 2002); **United States v. Corey**, 566 F.2d 429, 431 (2d Cir. 1977); *see also* **United States v. Gordon**, 987 F.2d 902, 909 (2d Cir. 1993). If the prior act does not provide a "non-propensity" basis for inferring knowledge or intent, it should be excluded. **United States v. Peterson**, 808 F.2d 969, 974 (2d Cir. 1987).

As the Fifth Circuit observed in **United States v. Kasouris**, 474 F.2d 689, 692

(5th Cir. 1973) (emphasis in original) (cited with approval in **United States v. Aminy**, 15 F.3d 258, 260 (2d Cir. 1994)):

> similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches ***near identity with the elements of the offense charge[d]***. There is no necessity for synonymy, but there must be substantial relevancy . . .

(emphasis added).

Rule 404(b) evidence that is not sufficiently similar to permit the inference of knowledge or intent, is not relevant. **United States v. Afjehei**, 869 F.2d 670, 674 (2d Cir. 1989). See also **United States v. Dennis**, 625 F.2d 782, 800 (8th Cir. 1980). Further, the mere fact that a prior act falls within the same general category of crime as the current charge does not suffice for relevancy purposes under Rule 404(b). As the Second Circuit noted in **United States v. Garcia**, *supra*, at 137, the government "may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime;" *accord*, **United States v. Edward**, 342 F.3d 168, 176 (2d Cir. 2003). Indeed, "a tangible connection between the acts must be identified that makes the prior act relevant to proving the contested fact." 342 F.3d at 176. It is an abuse of discretion for a court to admit Rule 404(b) evidence if the prior act is "not sufficiently similar to the conduct at issue." **United States v. Peterson**, 808 F.2d at 974. *See also* **United States v. Tubol**, 191 F.3d 88, 96 (2d Cir. 1999).

There is no concrete connection between the mortgage fraud proffered by the government as 404(b) evidence, and the scheme to commit fraud in the inducement which

7

seemingly comprises the government's theory.[2] The common appearance of the word "mortgage" in both does not serve to bridge the substantive gap between them, and serves to underscore the dangers attendant to such evidence.

### C. *"Relationship of Trust"*

The government's efforts to admit this evidence under other auspices is no less availing. The notion that the evidence is admissible under some "relationship of trust" exception is misplaced. There will be no claim by Khafizov that he was not closely aligned with the Cassutos, or that he was not a trusting business associate of theirs. The idea that this "brief" invocation of prior unrelated criminal activity will explain how they came to be linked together in the instant scheme is disingenuous. It bespeaks the fallacious notion that all criminal association is preceded by some earlier illicit relationship. This is temporally unsound, since there does always have to be a first time that people bind together for a nefarious purpose. Thus the Cassuto's assertion that on some earlier occasion, they engaged in mortgage fraud with Khafizov has limited probative value with regards to the instant scheme. To the extent that it has some relevancy, its probativeness is substantially outweighed by the risk of unfair prejudice from its admission. **United States v. Garcia**, 291 F.3d 1271 135 (2d Cir. 2002); **United States v. Pitre**, 960 F.2d 1112, 1119 (2d Cir. 1992).

---

[2]The government has vacillated between a theory that AHR was essentially a sham company created solely for the purposes of committing fraud, and a legitimate entity which utilized fraudulent means to induce its customers to part with their money. We believe that some fusion of the two theories will be advanced at trial by the government.

8

### D. *Documentary disclosure by the Government in the event the proffered evidence is admitted*

Finally, we need to make it unremittingly clear that Mr. Khafizov denies the allegation underlying the 404(b) proffer. If the court sees fit to admit this evidence, we reject the government's constriction on the scope of Jaime or David Cassuto's testimony. If Cassuto is allowed to summarily testify that he and Khafizov were earlier criminal partners, we intend to fully confront him on this issue as we must. Since the evidence has an inherent duality of purpose - both **404(b)** and **Bagley** impeachment - we have the right to be furnished with any documentation which relates to the prior mortgage fraud. We submit that the documents that exist, and are exclusively in the government's possession, both fully incriminate the Cassuto brothers in crimes of deceit and dishonesty, and exculpate Mr. Khafizov by virtue of the absence of his name and their failure to document the role ascribed to him. The government should not have the right to elicit the evidence with the figurative one hand, and withhold documents relevant to the claim with the other. We are entitled to full and fair cross-examination of these government witnesses, and that right is not diminished by the category into which the evidence falls. If the court is going to permit Jaime or David Cassuto to testify about prior mortgage fraud, it seems only fundamentally fair that the government be compelled to furnish all documents which are relevant to that assertion.

### The Government's Motion To Preclude

The government has sought an order from this court precluding the defense from

9

introducing evidence "[r]egarding Non-Fraudulent Conduct At AHR." The government's motion classifies such contemplated proof as "good acts" evidence, and avers that it is not relevant to an adjudication of the crimes alleged in the indictment.

We submit that the government's oversimplified classification of this evidence begs the essential question: within the framework of the crimes charged and the government's articulated theory, does the defendant have a constitutional right to present such proof? By logical necessity, the resolution of that question requires an examination of the crimes charged and the government's factual theory.

In the original indictment upon which the defendant was arraigned, the government has alleged that the defendant, through his conduct as a co-conspirator, principal and accomplice:

> perpetrated a scheme to defraud homeowners in dire financial straits through AHR and its employees. AHR, through the actions of the defendants and their employees, *falsely promised to assist these desperate homeowners by negotiating with banks to modify the terms of the homeowners' mortgages* in exchange for up-front fees of several thousand dollars. However, despite their promises, *AHR did little or no work to modify the mortgages* . . .

As such, the government has broadly claimed that AHR, of which the defendant was a purported principal, committed fraud by making a series of false representations to induce homeowners to part with their money, and then did nothing to carry out their promises. According to the specific language of the indictment, this is the very gravamen of the scheme to defraud: false promises accompanied by non-performance.

During the last pre-trial conference, when this issue was raised, the court made

10

clear that its decision on this issue would require a clear exposition of the precise evidence which will be offered by the government and our proposed response. On April 9, 2012 the government filed the instant *in limine* motion and in so doing has elucidated its position. While the government will call several purported victims at the trial to testify as to the specific "bad acts" alleged, it is equally clear that the government intends to elicit a broader and expansive theory, expressly detailed in their motion. In referring to AHR generally, the government has asserted that:

> their ***primary goal*** was to obtain as much money as possible from clients, ***as quickly and for as long as possible***, based on misrepresentations and fraud.

(Government Motion In Limine, p. 3, emphasis added)

The government has further asserted that it expects its proof to continue beyond the temporal threshold of the "inducement" and forge a pattern of continuous illicit behavior:

> Indeed, as victims are expected to testify, Khafizov ***repeatedly instructed victims to stop speaking with their mortgage lenders, to ignore communications from their lenders including foreclosure notices, and to disbelieve any statements by the lenders that AHR had never contacted them on the customer's behalf…***

(Government Motion In Limine, p. 3, emphasis added).

Finally, according to the government proffer:

> As witnesses are expected to testify, Khafizov and other sales people promised, among other things, that potential customers were guaranteed to receive mortgage modifications with AHR's assistance, that they would

11

>receive those modifications quickly (typically within 30-90 days), and that notwithstanding the guarantee of success, victims' upfront payments were fully refundable. ***In reality, the process of obtaining a mortgage modification was, at best, a lengthy and uncertain process,*** and AHR, which had (at its height) hired just two people to attempt to obtain such modifications from the lenders, ***met with little success.*** The Government expects the evidence to show that Khafizov ***never intended to, and generally did not in fact, refund victims' money***. Further, in ***an effort to silence complaining customers, including those demanding refunds, Khafizov engaged in additional fraud by creating fake leases and other false documents, and by encouraging his customers to submit false statements to their mortgage lenders***, in an effort to trick the lenders into agreeing to the mortgage modifications. He did so in order to appease customers, and prevent them from exposing the fraud.

(Government Motion In Limine, p. 4, emphasis added).

It is unmistakably clear that the government is intending to introduce evidence that the entire business of AHR was a sham, predicated on greed and deceit, in which clients were induced by unfulfilled promises, from the inception through the entirety of the relationship with the client.

The defendant's position is that AHR was a company formed with entirely legitimate intentions. We will assert that there was nothing fraudulent in the representations made to any prospective client, and that there was a genuine commitment to achievement of the desired goals, and substantial performance of those ends throughout the life of the business. Moreover, the defendant will seek to establish that the success of performance was a relative matter, predicated upon the actual cooperation of both the clients and the banks. If the government offers evidence from handpicked victims as

12

proof of larger scheme, we will seek to admit that several victims indeed did receive relief and that for many who did not, there were reasonable, non-criminal explanations. We are not, as the government argues, essentially offering one good deed for every bad one alleged. In essence, the defendant wishes to controvert, through both testimony and documentary evidence, the government's articulated definition of the scheme to defraud. When considered in these terms, the defendant's proffer is readily distinguishable from the facts of the only other case of precedential value cited by the government.[2]

In **United States v. Scarpa**, 897 F.2d 63 (2d Cir. 1990), the defendant sought to discover and introduce tapes of intercepted conversations, conducted in a social club, to demonstrate that they did not contain references to drug transactions. The tapes did include references to other illicit activity such as gambling and loansharking. In rejecting the defendant's contention, the court observed "[t]he absence of drug conversations is consistent with testimony by the cooperating witnesses that drugs were never discussed inside the Club." **Id.** at 71. This is distinct from the instant case, wherein the defendant seeks to introduce proof to rebut the government's pleaded assertion that after falsely inducing homeowners to pay for loan modification services, "AHR did little or no work to modify the mortgages."

The two fundamental rights of an accused at trial are the right to challenge the evidence brought forward by the government and the concomitant right to affirmatively present a defense. The latter, rooted in the defendant's long-standing entitlement to "compulsory process," is the right most directly concerned with ensuring that innocent

---

[2] The government's reliance on **United States v. Boykoff** is clearly misplaced as the case is not to be relied upon for precedential citation.

13

persons are not convicted. **Washington v. Texas**, 388 U.S. 14 (1967). The government's in limine motion seeks to undermine that fundamental right.

As the court held in **Washington**,

> The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present the defense, the *right to present the defendant's version of the facts* as well as the prosecution's to the jury *so it may decide where the truth lies*. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

388 U.S. at 19 (emphasis added)

This right protects, among other things, the truth-finding process. The integrity of criminal justice "would be defeated if judgment were to be founded on a partial or speculative presentation of the facts." **Taylor v. Illinois**, 484 U.S. 400, 409(1987) (*quoting* **United States v. Nixon**, 418 U.S. 683, 709 (1974) ). *Accord*, **Washington v. Schriver**, 255 F.3d 45, 56 (2d Cir.2001).

In cases such as this, where there is some lack of clarity as to the formal admissibility of the defendant's proffered evidence, the Court opined that "truth is more likely to be arrived at by hearing the testimony of *all persons of competent understanding* who may seem to have knowledge about the facts involved in a case, *leaving the credit and weight of such testimony to be determined by the jury* . . . " **Id.** (emphasis added).

Within that framework, the standards of relevance applied to the admissibility of the defendant's evidence may not be arbitrarily enforced. The defendant has a right, under

14

the compulsory process clause, to present any evidence that may reasonably be deemed to establish the existence of facts in his favor. If the relevance of the evidence is something about which reasonable persons might differ, using the analysis of **Washington v. Texas**, *supra*, instructing the jury concerning probative value and weight is far preferable to its exclusion. This evidence may be presented through direct testimony and through cross examination of government witnesses.

In evaluating problems of "probative value" of proffered defense evidence, it is important to consider two separate principles. First, the defense is not automatically held to the same standard as the prosecution in determining whether the evidence is sufficiently "probative" to be admitted. This derives, of course, from the principle established in **Washington**, that giving the defense parity with the prosecution is not sufficient if the rule, though equally applied to the accused and the government, still results in the exclusion of favorable evidence. The defendant's constitutional right to present exculpatory evidence is a critical factor in deciding evidentiary issues. This constitutional element may require the admission of evidence that would ordinarily be inadmissible. **Chambers v. Mississippi**, 410 U.S. 284 (1973).

In formulating its evidentiary rulings, particularly those that may impinge on constitutional guarantees, the court needs to consider whether the ruling will be "arbitrary or disproportionate to the purposes [it is ]designed to serve" **Rock v. Arkansas**, 483 U.S. at 56 (1987); **Michigan v. Lucas**, 500 U.S. 1743, 1747 (1991). A restriction is most likely to be found arbitrary when it is the application of a per se rule, or when it is applied by a court without due consideration of the individualized circumstances and interests

15

present in the matter before it. Here, the government seeks to have the court invoke a per se rule that what it refers to as "good acts" evidence is never admissible, without any deference to the individualized notion that the evidence directly rebuts the pleaded description of the scheme to defraud.

This inherent flexibility regarding the admissibility of defense evidence also derives from the precept that the defendant will prevail in a criminal trial merely by establishing a reasonable doubt about his guilt. Under the rubric of **Washington**, **Chambers** and their progeny, the threshold of admissibility should not be any higher than that suggested by the question "Could this evidence create a reasonable doubt in the mind of a qualified juror?" So long as there is a significant chance of this added item, developed by skilled counsel . . . could [induce] a reasonable doubt in the minds of enough jurors to avoid a conviction the constitutional standard of materiality has been met. **United States v. Miller**, 411 F.2d 825, 832 (2d Cir., 1969).

We submit that evidence which directly contradicts the central premises of the government's theory of the charged fraudulent scheme clearly crosses that threshold, and requires for the court to permit its introduction.

16

Respectfully Submitted,

_____/s/_____

James Kousouros
Allan Brenner
260 Madison Avenue, 22nd Fl
New York, NY 10016
(212) 532- 1934
*Counsel for Isaak Khafizov*

Cc;   Clerk of the Court

Nicole Friedlander
Assistant United States Attorney

Niketh Velamoor
Assistant United States Attorney

Isaak Khafizov

17